IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 7:20-CR-1 (HL) |
| ARMAND RASHAD BROWN, | |
| Defendant. | |

**ORDER**

Before the Court is Defendant Armand Rashad Brown's Motion to Dismiss Indictment. (Doc. 29). On July 20, 2021, the Court heard oral argument and **GRANTED** Defendant's motion from the bench. The indictment lodged against Defendant is **DISMISSED WITH PREJUDICE**. This order memorializes the Court's bench ruling.

**I.    BACKGROUND**

Defendant was first indicted on August 14, 2018 and charged with Possession of a Stolen Firearm in violation of 18 U.S.C. §§ 922(j) and 924(a)(2); and Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *United States v. Brown*, No. 7:18-CR-43 (HL). Defendant made his initial appearance and entered a plea of not guilty in that case January 3, 2019. The Court ordered Defendant detained pending trial. The Government obtained a superseding indictment on December 11, 2019. Then, on January 8, 2020, Defendant filed a motion to dismiss the indictment for a violation of the Speedy

Trial Act. Following a hearing on January 9, 2020, the Court dismissed that indictment without prejudice after concluding that the Government violated Defendant's right to a speedy trial.

On January 14, 2020, the grand jury returned a new indictment, again charging Defendant with possession of a firearm by a convicted felon and possession of a stolen firearm. (Doc. 1). Defendant made his initial appearance and entered a plea of not guilty on January 22, 2020. The Court ordered that Defendant remain detained pending trial.

On March 16, 2020, the Court entered its first COVID-19 Public Health & Safety Order. (Doc. 17). To protect the public health, the Court suspended all jury trials in the Middle District of Georgia. (Doc. 17, p. 2). In relation to criminal proceedings, the Court determined that the ends of justice required a continuance of all jury matters and that the period of any continuance should be excluded under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A). (*Id.*). The trial moratorium was amended on March 20, 2020 (Doc. 18) and extended on May 1, 2020 (Doc. 19); July 1, 2020 (Doc. 20); August 21, 2020 (Doc. 21); October 9, 2020 (Doc. 22); December 14, 2020 (Doc. 23); February 10, 2021 (Doc. 24); and March 19, 2021 (Doc. 25). The trial moratorium ended on May 2, 2021. (Doc. 64).

Fifty-five days passed between the date of Defendant's arraignment and the beginning of the COVID-19 trial moratorium, which paused the speedy trial clock. The speedy trial clock began to run again on May 3, 2021. On May 24, 2021, twenty-one days later, the case having not yet proceeded to trial, Defendant filed a motion to dismiss the indictment alleging a violation of his right to a speedy trial. (Doc. 29).

## II.     DISCUSSION

The Speedy Trial Act provides that the trial of any defendant who pleads not guilty must begin within 70 days of either the filing of the indictment or the date the defendant first appears before a judicial officer, whichever occurs later. *See* 18 U.S.C. § 3161(c)(1). The Government concedes that it violated Defendant's right to a speedy trial by failing to bring Defendant to trial within 70 days. The statutorily-prescribed sanction for the violation is dismissal of the indictment. 18 U.S.C. § 3162(a)(2). Dismissal may be either with or without prejudice; "neither remedy is preferred." *United States v. Russo*, 741 F.2d 1264, 1267 (11th Cir. 1984). The sanction imposed is left to Court's discretion after considering the following factors: (1) "the seriousness of the offense;" (2) "the facts and circumstances of the case which led to the dismissal;" and (3) "the impact of a reprosecution on the administration of the [the Speedy Trial Act] and

the administration of justice." 18 U.S.C. § 3162(a)(2). "A step-by-step analysis of each factor is necessary." *Russo*, 741 F.2d at 1267.

### A. Seriousness of the Offense

As to the first factor, both parties agree Defendant is charged with a serious offense. Defendant was indicted on one count of felon in possession of a weapon in violation of 18 U.S.C. § 922(g)(1) and one count of possessing a stolen firearm in violation of 18 U.S.C. § 922(j). The delay regarding the present indictment was less than a week beyond the Act's 70-day deadline, which the Court finds was not severe compared to the seriousness of the criminal charges. *See Russo*, 741 F.2d at 1267 ("Where the crime charged is serious, the court should dismiss only for a correspondingly severe delay."). This factor weighs in the Government's favor.

### B. Facts and Circumstances of the Case

The second factor—the facts and circumstances of the case—look to whether the Government has a legitimate reason for failing to bring the Defendant to trial. Specifically, the Eleventh Circuit focuses on "the culpability of the delay-producing conduct." *United States v. Williams*, 314 F.3d 552, 559 (11th Cir. 2005). Filing an indictment is "entirely within the prosecutor's discretion," thus "it is ultimately the obligation of the Government to ensure compliance with the Speedy Trial Act." *Id.* Therefore, "the burden is on the prosecution to explain the

cause of the pre-trial delay." *United States v. Ingram*, 446 F.3d 1332, 1337 (11th Cir. 2006) (quotation marks and citation omitted). The Government must demonstrate "[s]ome affirmative justification . . . to warrant a dismissal without prejudice." *Russo*, 741 F.2d at 1267. A finding that the defendant "contributed to and benefitted from the delay" may—to some extent—mitigate the Government's fault. *Williams*, 314 F.3d at 559; *see also United States v. Taylor*, 487 U.S. 326, 339 (1988) (Defendant's failure to appear for trial was "relevant" consideration for analyzing the circumstances of the case).

Here, the Government presented no reasonable justification either at the hearing or in its brief. The Government's brief cast blame on Defendant's counsel for not consenting to a motion to continue immediately upon the Government's request.[1] Speedy trial management rests entirely with the Government. A defendant never has responsibility to consent to a continuance motion. The Government may always file a motion to continue without the defendant's

---

[1] The Government's brief alleged that defense counsel "fail[ed] to communicate" with the Government and characterizes defense counsel's communications as "deception." (Doc. 30, p. 5). The Government's characterizations are inaccurate. Defense counsel submitted to the Court her correspondence with the Government. On April 23, 2021, before the end of the COVID-19 trial moratorium, defense counsel unequivocally stated that she intended to take the case to trial. (Doc. 31-1). On May 12, 2021, defense counsel indicated her ambivalence about whether her schedule would permit a trial continuance. (Doc. 31-2). From there, the Government continued its plea negotiations. (*Id.*). Defense counsel was in communication with the Government and without question did not act deceptively.

5

consent. Then, the speedy trial clock would stop, and the parties would litigate the motion. 18 U.S.C. § 3161(h)(1)(D). Defendants routinely dispute trial continuances—as is their right—and the Speedy Trial Act supplies factors for district courts to consider when ruling on such motions. 18 U.S.C. § 3161(h)(7)(B).

Simply put, the Defendant "has no duty to bring himself to trial." *Barker v. Wingo*, 407 U.S. 514, 527 (1972). The Government's misunderstanding or miscommunication with Defendant's counsel provides no justification. Furthermore, no facts suggest that Defendant contributed to or benefitted from the delay. When the Court pressed the Government for a justification, the Government accepted responsibility for neglecting the speedy trial clock and also cited confusion about the trial term calendar from Defendant's 2018 indictment. "[L]ack of improper motive," "mere negligence," or "inadvertence" are insufficient to avoid dismissal with prejudice. *Williams*, 314 F.3d at 559. This factor weighs in Defendant's favor.

### C. Impact of Reprosecution on the Administration of the Act and the Administration of Justice

The third element strongly favors Defendant. The Eleventh Circuit has recognized "tension between the administration of the Act and the administration of justice." *Williams*, 314 F.3d at 560. There is always concern that "dismissal without prejudice takes the teeth out of the Act's requirements." *Id.* And the

Government generally argues that "reprosecution furthers the public's interest" by bringing an accused to trial. *Id.* These arguments generally have the tendency to "neutralize each other;" however that is not the case here. *Id.* ("[T]his third factor is not always neutral."). First, the parties agree that Defendant may be prosecuted for his conduct in state court, so the public's interest in bringing an accused to trial is preserved. Successfully prosecuting wrongdoers is not the only relevant interest when considering "the administration of justice." Administration of justice also includes a defendant's interest in quickly proving his innocence and removing the "cloud of anxiety, suspicion, and often hostility," that comes with an indictment. *Barker*, 407 U.S. at 553. An indictment is merely an allegation. The Speedy Trial Act requires that those allegations be adjudicated swiftly while the defendant enjoys a presumption of innocence. In this case, the Government's allegations against Defendant have clouded his life for over three years.

Next, permitting a second violation of the Speedy Trial Act to stand without prejudice would seriously call into question whether and how the Speedy Trial Act may be enforced. A pattern of disregarding a defendant's speedy trial rights is detrimental to administering justice and needlessly expends the Court's limited

7

resources.[2] *See Taylor*, 487 U.S. at 339 ("[A] neglectful attitude on the part of the Government reasonably could be factored against it, . . . [and a] finding, suggesting something more than an isolated unwitting violation, would clearly have altered the balance.").

Finally, the Government contends that Defendant has shown no prejudice because the evidence was preserved, and the Government's witnesses were prepared to testify. Two violations of the Speedy Trial Act prejudice Defendant because the severe charges and uncertainty of their resolution likely "create[d] anxiety in him, his family and his friends." *Taylor*, 487 U.S. at 340 (quoting *Barker*, 407 U.S. at 537). Furthermore, the witnesses' memory of the events leading to these charges—including Defendant's memory should he choose to testify—likely have deteriorated since the events supporting the indictment occurred in May of 2018. (Doc. 1); *see Barker*, 407 U.S. at 532 (prejudice exists "if defense witnesses are unable to recall accurately events of the distant past").

### III.   CONCLUSION

Balancing the three factors in 18 U.S.C. § 3162(a)(2), the Court finds that Defendant has experienced a severe deprivation of his rights under the Speedy

---

[2] On January 9, 2020, the Court heard three motions to dismiss the indictment in the Government's cases. *See United States v. Brown*, 7:18-CR-43; *United States v. Dowdell*, 7:18-CR-55; *United States v. Phillips*, 7:18-CR-56. The Court dismissed the three indictments for speedy trial violations. *See Taylor*, 487 U.S. at 339 (noting that a "pattern of neglect by the local United States Attorney" could weigh against the Government). Each dismissal was without prejudice.

Trial Act. The Court concludes that **dismissal of the indictment with prejudice** is appropriate.

    **SO ORDERED** this 30th day of July, 2021.

                                 *s/ Hugh Lawson*
                                 **HUGH LAWSON, SENIOR JUDGE**

kac